# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## NOVEMBER 1998 SESSION

FILED

February 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 03C01-9802-CR-00081 |
| | ) | |
| Appellee | ) | |
| | ) | Sullivan County |
| vs. | ) | |
| | ) | Honorable Phyllis H. Miller, Judge |
| **WOODROW WILSON MOUNGER,** | ) | |
| | ) | (Denial of Probation) |
| Appellant. | ) | |

FOR THE APPELLANT:

BURKETT C. McINTURFF
Attorney at Law
132 Broad St.
Kingsport, TN 37662

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

CLINTON J. MORGAN
Counsel for the State
Criminal Justice Division
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

H. GREELEY WELLS, JR.
District Attorney General

BARRY STAUBUS
TERESA MURRAY SMITH
Assistant District Attorney Generals
140 Blountville Bypass
Box 526
Blountville, TN 37617-0526

OPINION FILED: _____

**REVERSED AND REMANDED**

JAMES CURWOOD WITT, JR.
JUDGE

**OPINION**

The defendant, Woodrow Wilson Mounger, pleaded guilty in the Sullivan County Criminal Court to incest, a Class C felony, statutory rape, a Class E felony, and three counts of sexual battery, also Class E felonies. In accordance with the plea agreement, the defendant received an effective six-year sentence.[1] After a sentencing hearing, the trial court denied the defendant's request for alternative sentencing and ordered him to serve his sentence in the Department of Correction. The defendant appeals pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure contending that the trial court erred by refusing to permit Dr. Thomas Schacht to testify at the sentencing hearing and by denying the defendant full probation or another form of alternative sentence. For the reasons discussed below, we reverse the judgment and remand the case to the trial court for a new sentencing hearing.

When an accused challenges the length, range, or manner of service of a sentence, this court has the duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that

---

[1] The plea agreement provided for two-year sentences for each of the Class E felonies and a six-year sentence for incest. All sentences run concurrently to each other and to a Sevier County conviction on a related charge.

2

the defendant made regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987); Tenn. Code Ann. §§ 40-35-102,-103,-210.

At the time of sentencing, the defendant was fifty-two years old. He had been married to the same woman for twenty-seven years and was the father of a twenty-six year old son. He had been employed at Eastman Kodak Company since 1971.[2] He served in Viet Nam and received an honorable discharge from the Air Force. He had no prior criminal record except for a contempt of court citation in 1963 and an arrest in 1985 for carrying a weapon, a charge that was dismissed. The victim in this case was the defendant's fourteen-year old niece, the daughter of Mrs. Mounger's sister. The charges resulted from a series of incidents that occurred in May of 1996 in which the defendant admitted he had kissed, fondled, and digitally penetrated the victim.

On March 21, 1997, the defendant pleaded guilty to one count of statutory rape, one count of incest, and three counts of sexual battery. The trial court imposed the effective six-year sentence included in the plea agreement and scheduled a hearing to consider alternative sentencing possibilities. Pursuant to Tennessee Code Annotated section 39-13-705, the trial court ordered the defendant to submit to an evaluation by Counseling and Consultation Services (C.C.S.), an entity certified by the State of Tennessee as competent to evaluate and treat sex offenders. See Tenn. Code Ann. § 39-13-707 (1997). As required by statute, the C.C.S. evaluation became part of the pre-sentence report and was considered by the trial court in determining the sentencing issues. See Tenn. Code Ann. § 39-13-705(b) (Supp. 1998). According to the report, C.C.S. concluded that the defendant was likely to reoffend and was untreatable at that time "due to his unwillingness to

---

[2] He and his wife divorced as result of these charges, and he was fired from his job when the trial court denied probation. He was four years away from being eligible for full retirement benefits.

be honest about his sexual offending history."[3]  The report also notes that "Mr. Mounger reported that he was not fully disclosing of his sexually offensive history at the advice of his attorney."[4]  According to the report, the defendant, at first, refused to discuss any prior history of sexual activity with a minor.  However, after he failed a lie detector test, he admitted that he had kissed a friend of the victim.

To rebut the C.C.S. evaluation which concluded that he was untreatable and likely to re-offend, the defendant hired Dr. Thomas Schacht, a tenured full professor in the Department of Psychiatry and Behavioral Sciences at the College of Medicine at East Tennessee State University where he was the director of the post-graduate residency in forensic psychiatry. Dr. Schacht holds dual board certification by the American Board of Professional Psychology in Clinical Psychology and in Forensic Psychology, a doctorate in clinical psychology, an internship in medical psychology, a residency in pediatric medical psychology and developmental disabilities, and he has completed a two-year post-doctoral research fellowship. Dr. Schacht interviewed the defendant and reviewed the report prepared by C.C.S.  As part of his review of the C.C.S. report, he requested that C.C.S. provide copies of the raw data upon which their conclusions were based. The defendant signed a written consent for the release of the information, but C.C.S. refused to release the information.  The defendant asked the court to order C.C.S. to comply and requested a hearing on the motion.

At the hearing, the state presented the trial court with a letter from Lenny Lococo, the chairman of the Tennessee Sex Offender Board in which Lococo

---

[3]    The defendant's marriage was troubled, and according to the defendant, he stayed with his wife only because of his son.  The defendant freely admitted that he had carried on numerous affairs during the first fifteen years  of his marriage.  While in Viet Nam, he acknowledged that he had occasionally engaged in sexual activity with prostitutes.

[4]    During the hearing, defense counsel explained to the trial court that he advised the defendant not to reveal to C.C.S. any other incidents that might give rise to more criminal charges against him because C.C.S. was required to turn over such information to the authorities.  In an earlier case, one of defense counsel's clients had openly discussed his sexual history with the C.C.S. interviewer and, as a result, was convicted of a number of serious charges.

4

noted that although Dr. Schacht has a range of clinical expertise, he had not been certified by the Tennessee Sex Offender Board as a treatment provider. Because Dr. Schacht's affidavit contained no references to formal training in the area of sexual offender dynamics or victimology, Mr. Lococo concluded, it would be difficult for Dr. Schacht to interpret accurately the specific materials and assessments relating to sex offenders.[5] The state also referred the trial judge to a previous case in which Judge R. Jerry Beck had ruled that Dr. Schacht was not qualified to evaluate or treat a convicted sex offender absent certification by the Department of Correction.[6]

The trial court found that Dr. Schacht had not been certified by the Department of Correction and therefore was not qualified to treat the defendant or testify at the sentencing hearing.[7] The trial judge stated that those convicted of sex offenses were required to cooperate fully with the evaluation and that when the defendant refuses to cooperate that the court could assume the worst.

At the sentencing hearing, defense counsel requested that Dr. Schacht's report be admitted into evidence. The trial court reiterated its earlier position that neither Dr. Schacht's testimony nor his report would be admitted. The court stated:

> If the Defendant had cooperated with the organization that was certified to evaluate him, and then, you come in with evidence from another professional on that issue, then I think I might consider that; but I will not if

---

[5] We glean from the record that the Department of Correction had conducted its first five day training program just previous to the December, 1997 court hearing in this case. Dr. Adler of Counseling and Consultation Services was the only provider in the Tri-Cities area that had received certification at the time.

[6] See State v. Glenn Kermit Lilly, No. S38627, Sullivan County, Second Judicial District. Upon a motion by the defense, the trial court admitted the complete transcript of the relevant hearing in the Lilly case as evidence in this case. We discuss Judge Beck's ruling in greater detail below.

[7] The trial court's ruling rendered moot the defendant's motion for the release of the raw data to Dr. Schacht. The defendant has not raised the issue, and we express no opinion on the appropriateness of C.C.S.'s refusal to release the data.

5

he didn't cooperate with the organization that was certified by the State to evaluate. Because Dr. Schacht is just, you know, just - - he's not qualified.

The defendant presented the testimony of two employees of the Kodak Company, both of whom had known and worked with the defendant for many years. Both testified that he was an excellent worker and a good, dependable person. They recommended that he be placed on probation. The defendant did not testify.

According to the pre-sentence report, neither the victim nor the victim's mother wished the defendant to be incarcerated. The victim's mother reported that her daughter was doing well and had put the incident behind her. The defendant had made no attempt to contact the victim. Other than the pre-sentence report and the C.C.S. evaluation, the state put on no evidence at the sentencing hearing.

At the conclusion of the hearing, the trial judge found that although the defendant had not been a faithful husband, he was a good employee and a veteran with an honorable discharge. She found that the offenses were not the result of one-time impulsive behavior but extended over a considerable period of time. She found that the defendant's remorse as expressed in the presentence report was not sincere because in his C.C.S. interview he continued to minimize his role in the offense and to shift some of the responsibility onto the victim and his former wife. She noted that the defendant was experiencing some physical problems and had undertaken some counseling after he was charged but had not continued the sessions. In addition, she found that the C.C.S. evaluation indicated that he was sexually aroused most strongly by minors. She noted that he had answered deceptively to two polygraph questions that were part of the evaluation and, when confronted, admitted that he had kissed the victim's friend on the mouth at a

6

basketball game.  As result of his refusal to tell the truth and to accept responsibility for his actions, the trial court denied the defendant alternative sentencing.

The trial court refused to consider Dr. Schacht's report or to allow him to testify because he was not certified according to the recently adopted criteria and requirements of the state's Sex Offender Treatment Board pursuant to Tennessee Code Annotated section 39-13-704(d)(2) and because the defendant had not cooperated with his court-ordered evaluation.  Under the facts and circumstances presented in the record, neither of these reasons is sufficient to deprive the defendant of his opportunity to be heard and to rebut the conclusions in the C.C.S. report.

The Sex Offender Treatment Board prescribes standardized procedures for evaluating and identifying sex offenders and standards for programs for treating sex offenses.  Tenn. Code Ann. § 39-13-704 (d)(1), (2) (1997).  Tennessee Code Annotated section 39-13-705 requires any convicted sex offender who is seeking probation to participate in an evaluation for the purposes of identification and assessment of risk potential and to establish a treatment plan and procedures for monitoring behavior. Tenn. Code Ann. § 39-13-705(b) (Supp. 1998).  If the trial court grants probation or alternative sentencing, any treatment plan recommended by the evaluation becomes a condition of probation. Id.  Section 39-13-704(a) created the Sex Offender Treatment Board to develop and prescribe a standardized procedure for performing the evaluation and for providing treatment to and monitoring of convicted sex offenders.

Tennessee Code Annotated section 39-13-707 provides that "[t]he department of correction, the judicial branch, or the department of children's services shall not employ or contract with any individual or entity to provide treatment services pursuant to this part unless the treatment services to be provided

7

by such individual or entity conform with the standards developed pursuant to § 39-13-704(d)(2)."

Lococo's testimony in the Lilly hearing on June 27, 1997, was exhibited to the sentencing hearing in the present case. It reflects that Lococo, the Chairperson of the Sex Offender Treatment Board, holds a master's degree in counseling and psychology with an "area of expertise . . . in domestic violence and sexual offender behaviors" and has thirteen years of experience. He testified the Board had only recently completed its task of developing the standardized procedures. In conjunction with these standards, he testified that the Board adopted a "certification" program for those who would be eligible to provide treatment pursuant to section 39-13-707, "a lot of [which] we're putting together . . . through my own experience." Included in the certification program is a 40-hour training session. Lococo testified that the workshop was intended for "people who have Masters Degrees, Social Workers who have some rudimentary knowledge of this particular field." He also stated that medical doctors and psychiatrists who claim to be sex offender treatment providers but in actuality only provided antidepressants as treatment would be required to take the training and to have some community linkage with a professional that had the expertise to understand the behavioral aspects of sex offenders. Waivers would be available for those who had the appropriate experience or educational background. The Board conducted the first training session in October, 1997, just two months before the hearing on the defendant's motion.

We have carefully considered the statutes and the explanation by the chairman of the Sex Offenders Treatment Board and have found no justification therein for refusing to admit Dr. Schacht's testimony and report at the sentencing hearing. In the first place, the statute only forbids the court or other state agencies to employ or contract with any individual or entity whose treatment services do not conform with the standards developed by the Board. Tenn. Code Ann. § 39-13-707

8

(Supp. 1998). The statute does not per se authorize nor mandate the Board to certify anyone, and moreover, the prohibition against state contracting with non-conforming entities is directed toward those entities which "provide treatment services." See Tenn. Code Ann. § 39-13-707 (emphasis added). It does not speak to the qualifications of a provider whose activity is evaluative only, nor does it preclude a court from considering the information and knowledge of any qualified expert witness in making its sentencing determinations. It merely requires that the court consider the evaluation report in determining the sentencing issues. Tenn. Code Ann. § 39-13-705(b) (1997).

Additionally, the state's reliance upon Lilly was misplaced. The trial court in Lilly did not find that the testimony of Dr. Schacht and the other experts were inadmissible at the hearing. In fact, a careful reading of that hearing demonstrates that the reports of Dr. Schacht and the other experts were admitted as exhibits. The issue in Lilly was whether the court could employ one of the doctors who had not yet received certification to treat the defendant, and the trial court found that because only C.C.S. had received the appropriate certification, only C.C.S. could perform the statutory evaluation and carry out the mandatory treatment program. Because only Dr. Adler of C.C.S. could provide the requisite report, the trial judge continued the probation hearing to allow for the evaluation. The trial court remarked that if Dr. Adler found that Lilly was likely to reoffend, he could bring back Dr. Schacht or one of the other doctors to testify at the probation hearing. Under those circumstances, the court would have to choose between the doctors on this issue of whether to grant probation. Nothing in Lilly supports the prosecution's contention that Dr. Schacht's testimony was inadmissible at the defendant's probation hearing.

The Rules of Evidence apply at sentencing hearings. State v. Taylor, 744 S.W.2d 919, 921 (Tenn. Crim. App. 1987); Tenn. Code Ann. § 40-35-209(b) (1997). The testimony of experts is governed by Rules 702 and 703. Tennessee's

9

rules allow for the admission of expert testimony if "the specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid.702. An expert is one who is qualified "by knowledge, skill, experience, training, or education" to provide specialized knowledge. Id.

It is uncontested that Dr. Schacht, a tenured professor of clinical psychology at East Tennessee State University's medical school, had not received state certification as a treatment provider at the time of the hearing. He may well have no desire or need for such certification in his professional life. His lack of certification, although it precludes him from contracting with the state as a treatment provider, does not necessarily mean that he has no "knowledge, skill, experience, training, or education" that would substantially assist a trier of fact in determining whether the defendant should receive probation. In his affidavit, which the trial court refused to consider, Dr. Schacht outlined his educational and professional background which includes board certification in clinical psychology and forensic psychology, residencies in pediatric medical psychology and post-doctoral research. If Dr. Schacht had been placed on the stand, defense counsel and the state could have explored the doctor's background in detail and the trial court could have formed a reasoned judgment concerning the doctor's qualifications based on his actual experiences. The trial court could then have allowed or disallowed his testimony based on whether it would be of "substantial assistance" to the court, and, if allowed, could have afforded the testimony such weight as the court thought was warranted. The fact that Dr. Schacht was not certified by the State of Tennessee as a treatment provider may or may not be a factor for the court to consider in determining the weight to be given to the testimony.

Under Tennessee law, a trial court shall afford the parties at a sentencing hearing the opportunity to be heard and to present evidence relevant to the sentencing. Tenn. Code Ann. § 40-35-209(b) (1997) (emphasis added). Reliable hearsay may be admitted if the opposing party is given the fair opportunity

10

to rebut it. Id. The opportunity to rebut hearsay evidence lessens the potential for unreliability. State v. Bud Cash, Jr., No. 286, slip op. at 24 (Tenn. Crim. App., Knoxville, Jan. 30, 1992). By statute, the mandatory evaluation of a convicted sex offender becomes part of the presentence report. Tenn. Code Ann. § 39-13-705 (Supp. 1998). This court has previously held that summary refusal to review evidence presented to rebut information contained in the presentence report is error. State v. Bud Cash, Jr., slip op. at 24 (summary refusal to review and weigh letters written on behalf of defendant is inappropriate).

Dr. Schacht's lack of certification as a treatment provider by the Sex Offender Treatment Board should not, in this context, preclude him from testifying as an expert. Dr. Schacht was not seeking to treat or monitor the defendant but to critique the findings of the court-ordered evaluation. At the time of the hearing, the certification process had just begun. The first training session had ended shortly before the hearing. C.C.S. was the only certified provider in the area. A representative of C.C.S. did not testify, and the defendant had no opportunity to cross-examine the psychologist who interviewed, tested and evaluated him. Without Dr. Schacht or some other uncertified psychologist or psychiatrist, the defendant had no way to rebut the findings of the state-funded evaluation.

Consequently, we conclude it was error to refuse to accept Dr. Schacht as a witness and to reject his proffered report. This proof was offered to challenge or rebut the C.C.S. report, a part of which contained the finding that the defendant had not cooperated. Because the Schacht evidence was rejected, the defendant's opportunity to challenge the finding of uncooperativeness was impaired, if not precluded. For this reason, the asserted lack of cooperation cannot justify the rejection of the Schacht report and testimony. Accordingly, neither of the asserted grounds supports this action of the trial court.

11

In order to assist the trial court on remand, we express our further concern about the exclusion of Dr. Schacht's testimony because the defendant was uncooperative with the evaluator. The C.C.S. report drew two conclusions: (1) that the defendant was uncooperative and (2) that he was untreatable. The trial court relied upon some combination of these findings in rejecting Dr. Schacht as a witness. In particular, we focus our concern upon the fact that the evaluation's conclusions were accepted without any inquiry into the circumstances surrounding those conclusions or into the facts upon which the conclusions were based.

The defendant's initial unwillingness to incriminate himself during the interview with C.C.S. may not demonstrate an unwillingness to cooperate with the evaluation. Tennessee Code Annotated section 37-1-605 requires health or mental health professionals and those engaged in the admission, examination, care or treatment of persons to report known or suspected child sexual abuse to the appropriate local authority. Tenn. Code Ann. § 37-1-605 (a) (1), (2), (b)(1) (1996). Both the Fifth Amendment to the United States Constitution and Article 1, Section 9 of the Tennessee Constitution provide that a person may not be compelled to incriminate himself. Our supreme court has held that the Article 1, Section 9 is broader and more protective of this right than the United States Constitution. See State v. Crump, 834 S.W.2d 265, 268 (Tenn. 1992). In this instance, the defendant was well aware of the reporting requirement in section 37-1-605. His attorney had warned him about the possible consequences of disclosing information concerning previous sexual contact with minors to C.C.S. personnel. He, at first, refused to divulge any information that he believed would incriminate him further. When pressed, he explained that his attorney had advised him not to answer such questions and ultimately provided information about one incident. Due to the defendant's reluctance to disclose potentially incriminating information, C.C.S. concluded that the defendant was uncooperative with the evaluator and was not "honest" about his sexual history.

If there is no rational basis for concluding that the defendant is uncooperative other than that he followed the advice of counsel to protect his constitutional rights, the evaluator's conclusion may be viewed as a punitive response to the defendant's attempt to assert those rights. In such a case, we might well hold it was unfair for a trial court to use the finding of uncooperativeness to deprive the defendant of his right to present rebuttal evidence at his sentencing hearing or to refuse to consider him for any form of alternative sentencing for which he was presumptively suitable. See Tenn. Code Ann. § 40-35-102(6). We recognize that, in some instances, an assertion of constitutional rights may be overly broad, unnecessary or unreasonable, and in some cases it may be truly calculated to frustrate the evaluation. The trial court should make this determination rather than accepting the untested conclusions of the evaluator. At the least, the trial court should inquire into the evaluator's conclusions to determine whether the defendant was, in fact, uncooperative or dishonest.

The sex offender treatment statutes do not contemplate that the court give unfettered deference to the evaluator. As noted above, Code section 39-13-705(b) merely requires that the court consider the evaluation report as a part of the sentencing determination. In a sex offense case, the report is one component of the sentencing determination amidst the broader field of sentencing factors and principles. Among these are the principles that (1) when defendants qualify under Code section 40-35-102(6), the court must presume them to be favorable candidates for alternative sentencing, and (2) a defendant whose sentence is eight years or less is generally entitled to have the trial court consider the preferred alternative of probation. Tenn. Code Ann. § 40-35-209(b) (1997). A demonstrated lack of cooperation with an entity that had legitimate authority over a defendant may justify, upon apt findings made within the broad principles of the sentencing law, a denial of probation in a given case. However, it is only when such a determination is made in keeping with the principles of sentencing that the trial court's decision is

entitled to the deference of a presumption of correctness. Ashby, 823 S.W.2d at 169.

We share the trial court's concern that a defendant who declines to fully disclose his sexual history in order to frustrate the statutorily-mandated evaluation should not profit by his actions, especially when he is seeking the preferred sentencing alternative of probation. We agree that a defendant is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general. See Tenn. Code Ann. § 40-35-303 (b) (1997); State v. Bingham, 910 S.W.2d, 448, 455-56 (Tenn. Crim. App. 1995). However, even though C.C.S.'s methods in this case may have been clinically sound, they appear heavy-handed when the client is suspended above penal abyss by only the thinnest gossamer strand of constitutional rights.[8]

Nevertheless, we need not determine the bases for the C.C.S. conclusions nor the soundness of the trial court's reliance thereon. We have held that Dr. Schacht's proffered testimony may not be excluded merely because he was not "certified" by the Sex Offender Treatment Board. Because the defendant was denied the opportunity to present evidence on his own behalf and had no fair opportunity to rebut the hearsay evidence presented by the state, the trial court's denial of probation cannot stand. All of the relevant facts and circumstances are not before this court, and we are unable to conduct a review of the defendant's sentences required by statute. See State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987); Tenn. Code Ann. §§ 40-35-102, -103, -210 (1997).

_____

[8] We notice that C.C.S.'s certification and at least some of its procedures are established by a board that is essentially a state agency and has broad ties to state law enforcement. The "sex offender treatment board" is established "in the department of correction." Tenn. Code Ann. § 39-13-704 (a) (1997). Of the thirteen members of the board, ten are appointed by the Commissioner of the Department of Correction, another is appointed by the Tennessee Bureau of Investigation, and still another is appointed by the board's presiding officer who in turn is designated by, and serves at the pleasure of, the Commissioner. Id.

This case is remanded to the trial court for a new sentencing hearing in which the defendant will have a fair opportunity to present relevant testimony and other evidence on his own behalf and to rebut the information in the presentence report.

_____
JAMES CURWOOD WITT JR., Judge

CONCUR:


_____
DAVID H. WELLES, Judge


_____
L. TERRY LAFFERTY, Special Judge

15