IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2000

## STATE OF TENNESSEE v. FRANKIE LEE LUNSFORD

**Direct Appeal from the Criminal Court for Sullivan County**
**Nos. S42,802 & S42,923      R. Jerry Beck, Judge**

---

**No. E2000-00642-CCA-R3-CD**
**December 6, 2000**

---

The defendant appeals from his sentences imposed in the Sullivan County Criminal Court for three counts of contributing to the unruliness of a minor, a Class A misdemeanor; one count of inhaling paint, a Class A misdemeanor; one count of public intoxication, a Class C misdemeanor; one count of giving paint to another for unlawful purposes, a Class E felony; and one count of possession of drug paraphernalia, a Class A misdemeanor. The trial court imposed a sentence of two years on the felony conviction to be served in the Department of Correction, with the misdemeanor sentences running concurrently to the felony and to each other. In this direct appeal, the defendant challenges the denial of probation or alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. 3; Judgment of the Criminal Court is Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Terry L. Jordan, Assistant Public Defender, Blountville, Tennessee, for the appellant, Frankie Lee Lunsford.

Paul G. Summers, Attorney General and Reporter, Clinton J. Morgan, Nashville, Tennessee, H. Greeley Wells, Jr., District Attorney General, Mary Katharine Harvey, Assistant District Attorney General, James Goodwin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Frankie Lee Lunsford stands convicted upon his guilty and/or Alford pleas to three counts of contributing to the unruliness of two minors, a Class A misdemeanor, possession of drug paraphernalia, a Class A misdemeanor, inhaling paint, a Class A misdemeanor, public intoxication, a Class C misdemeanor, and giving paint to another for unlawful purposes, a Class E felony. See Tenn. Code Ann. § 37-1-156 (1997) (contributing to unruliness of minor); Tenn. Code Ann. § 39-

17-425 (1997) (possession drug paraphernalia); Tenn. Code Ann. § 39-17-422(a) (1997) (inhaling paint); Tenn. Code Ann. § 39-17-310 (1997) (public intoxication); Tenn. Code Ann. § 39-17-422(c) (1997) (giving paint to another). Having received an effective, incarcerative sentence of two years, the defendant appeals. After reviewing the record, the briefs of the parties, and the applicable law, we affirm the trial court's denial of probation or other alternative sentencing.

Frankie Lee Lunsford, 24 years old at the time of sentencing on the instant charges, dropped out of Sullivan County East High School when he was seventeen years old and after completing the ninth grade. Three years later, in 1996, he was arrested for and convicted of disorderly conduct and resisting arrest; he received a suspended sentence on those convictions. Later, in the same year, the defendant was involved in domestic violence concerning his wife, which resulted in a conviction for simple assault; again, he received a suspended sentence, and he was ordered to complete domestic violence counseling and to have no contact with the victim.

In the following year, 1997, the defendant was arrested for felony child abuse. He had fractured the skull of his son, who was eight months old. He was convicted and sentenced as a Range I standard offender to three years incarceration on that charge. He appealed the denial of probation and was released on an appeal bond. While released pending his appeal, the defendant was arrested in 1998 on the charge of public intoxication. He was convicted and fined, and he received a suspended, thirty-day sentence.

The events leading to the sentencing appeal before our court also occurred while the defendant was on the appeal bond from his child-abuse sentence. The defendant developed a romantic relationship with a female minor, LF, who was six years his junior.[1] The minor's parents did not approve of the relationship, and they repeatedly told their daughter not to be in the company of the defendant. The parents also confronted the defendant and demanded that he stay away from their daughter. Nonetheless, on April 24, 1999, the defendant accompanied LF to her high school prom as her "date." LF's mother learned of the prom date when she found photographs of her daughter and the defendant that were taken in a friend's backyard and that showed them together and dressed in formal attire. Less than a month later, on May 15, 1999, LF failed to report to work. She was missing for two days, during which time she and the defendant were together. LF finally called her parents when she learned that the sheriff's department was looking for her.

The defendant's involvement with LF resulted in two counts of contributing to the unruliness of a minor. The defendant subsequently entered an Alford plea to these charges.

The other charges were the product of an earlier incident on February 11, 1999. That day, the Bristol police responded to a report of an open fire at Kentucky Avenue in Sullivan County. When officers arrived at the scene, they discovered the defendant and a juvenile male, BS. The defendant and the juvenile were inhaling paint through plastic bags. A can of paint and a metal pipe

---

[1]  In accordance with this court's policy, the minor victim will be referred to only by her initials.

were nearby. The minor gave a statement that the defendant purchased the paint, inhaled it, and provided it to him. As a result, the defendant was charged with public intoxication, inhaling paint, possession of drug paraphernalia, contributing to the unruliness of the minor, and giving paint to the minor for unlawful purposes. To these charges, the defendant entered pleas of guilty.

The defendant pleaded pursuant to a plea agreement with the state. At the time the defendant entered his pleas, the trial court imposed the agreed upon sentences but continued the matter for subsequent consideration of alternative sentencing. For each of the five, Class A misdemeanors, the trial court sentenced the defendant to eleven months and 29 days. On the Class C misdemeanor, the trial court imposed a sentence of 30 days. Finally, on the Class E felony of giving paint to the minor for unlawful purposes, the trial court sentenced the defendant to two years, as a Range I, standard offender, with a 30 percent release eligibility date. The trial court ordered that the sentences were to be served concurrently to each other, for an effective sentence of two years; however, these sentences were imposed to run consecutively to the defendant's three-year sentence on his 1998 conviction of child abuse.

At the hearing to consider alternative sentencing, the defendant testified in his own behalf, and he also presented testimony from Roger Dale Hodges, who was employed with Jacob's Creek Job Corps, and from Lawrence Stout, the minister at the defendant's church.

Mr. Hodges testified that he is an admissions officer, counselor, and social skills trainer with the job corps. He had known the defendant's parents for some time, and he met the defendant about a year earlier at a restaurant where the defendant worked. Mr. Hodges was aware of the defendant's criminal convictions, and he had looked into the possibility of admitting the defendant to the job corps program.

Mr. Hodges explained that the job corps program was quite structured and focused on education and employment training. The defendant, if admitted, would be required to live on campus in residential housing; the program lasted two years. Because of his felony convictions, the defendant would not be eligible for the program without a waiver of the admission requirements. Mr. Hodges, however, was optimistic that the program could "turn him around and make a productive citizen out of him."

Mr. Stout testified that he is the minister at Full Gospel Tabernacle in Bristol, Tennessee. He had been with the church for about 26 years, and he had known the defendant's grandparents for over 40 years. Mr. Stout had only recently become acquainted with the defendant through his ministry. Mr. Stout explained to the trial court that the defendant had expressed genuine remorse to him for things he had done. According to Mr. Stout, the defendant has a lot of musical talent. Mr. Stout believed the defendant would be a great asset to his grandparents in terms of caring for them if he were released to serve his sentences.

Mr. Stout indicated that the defendant came from a broken home and that his parents lived in different states; he thought the defendant needed guidance. Mr. Stout offered to provide support for the defendant if he were to be released.

The defendant then took the stand. He told the trial court that attending church had shown him he could do things with his life other than running around with friends and using drugs. The paint inhaling offense occurred, according to the defendant, before he met Mr. Stout. After meeting the minister, the defendant said that he had turned his life away from drugs.

By the time of the alternative sentencing hearing, the defendant had been incarcerated continuously for about nine months. He acknowledged having a drug problem. He testified that he recognized that he had almost ruined the lives of his grandparents and of his son because of drugs. He wanted to be released, get a job, and take care of his son and grandparents. The defendant wanted to participate in the job corps program so he could get his GED, become trained in another trade, and obtain a good job.

The defendant claimed that because of his incarceration he had learned that his actions had consequences and that there was more he could do with his life than sitting in jail. He described how unpleasant and painful it was to be incarcerated and separated from family members, but he took responsibility for what he had done.

When the defendant's testimony concluded, the trial court denied alternative sentencing. The trial court expressed specific reservations about the defendant committing additional offenses while released on an appeal bond. Based on the presentence report and the defendant's history, the trial court lacked confidence that the defendant would be successful if sentenced to probation or even a community corrections alternative sentence. In the trial court's view, the defendant had "just run out of rope."

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review reflects that the trial court properly considered all relevant factors and that its findings of fact are adequately supported by the record, this court must affirm the sentence, even if our independent judgment on the question might differ. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The record in this case reflects that the trial court properly considered the sentencing principles relevant to probation and other alternative sentencing. Accordingly, the trial court's determination is entitled to the presumption of correctness.

Regarding alternative sentencing, a defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (1997). Our sentencing law also allows that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. § 40-35-102(5). A felon sentenced to eight (8) years or less and who is generally eligible for probation. See Tenn. Code Ann. § 40-35-303(a), (b).

"[D]etermining whether a defendant is entitled to an alternative sentence necessarily requires a separate inquiry from that of determining whether the defendant is entitled to full probation." State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). A defendant "is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general." State v. Mounger, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999). See Tenn. Code Ann. § 40-35-303(b)(1997); Bingham, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990). In deciding if probation is appropriate, the following factors should be considered: (1) the nature and characteristics of the crime; (2) the defendant's potential for rehabilitation; (3) whether full probation would unduly depreciate the seriousness of the offense; and (4) whether a sentence of full probation would provide an effective deterrent. See Bingham, 910 S.W.2d at 456.

As a Range I offender, the defendant enjoyed the presumption of favorable candidacy for alternative sentencing for his Class E felony. See Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, he was eligible for probation. See Tenn. Code Ann. § 40-35-303(a) (1997). The record in this case, however, demonstrates that the presumption of favorable candidacy has been soundly rebutted by the defendant's history of repeated lawless behavior. See Tenn. Code Ann. § 40-35-103(1)(A) (confinement may be based on necessity to "protect society by restraining a defendant who has a long history of criminal conduct); Tenn. Code Ann. § 40-35-103(1)(B) (confinement may be based upon the fact that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant). This same lawless behavior defeats his bid for probation.

The defendant received the benefit of suspended sentences in 1996 on his disorderly conduct and resisting arrest convictions. Likewise, the defendant was afforded favorable sentencing treatment (an eleven month, 29 day suspended jail sentence) when he assaulted his wife in 1996. When the state questioned the defendant about the assault conviction, his response was telling; he replied, "[I]t wasn't assault, it was domestic violence." Shortly after his assault conviction, the defendant then threw his eight-month old son and fractured the child's skull. That conduct resulted in a conviction for child abuse. The defendant was sentenced to three years as a Range I standard offender, and for the first time the defendant did not receive a suspended sentence. The defendant

appealed the denial of probation, which was his right, and he was released on an appeal bond pending disposition of that appeal.

To make matters worse, while the defendant was awaiting the results of his appeal and while free on the appeal bond, he continued to commit criminal offenses. The defendant was convicted of public intoxication in the fall of 1998, and he began the criminal spree involved in this case in early 1999. He attaches no significance to involving minor children in his criminal activities; indeed, when the state questioned him about giving paint to a minor, the defendant rationalized that "we're talking about a minor that has more felony charges and more misdemeanor charges than most of the people that's incarcerated." He also added in defense that "if I hadn't bought it [the paint], he would have stolen it anyway."

The defendant has an obvious drug problem, which he has not resolved. After he was arrested for child abuse in 1997, he was required to attend and complete outpatient drug and alcohol treatment. Even so, the defendant informed the presentence investigator that he drinks during big holidays. He admitted to previously using "crystal meth," and he had sniffed paint prior to the offenses involved in this case. The defendant began smoking marijuana when he was a teenager, but he told the presentence investigator that he last used marijuana in 1997 or 1998.

The trial court's lack of confidence that this defendant can be successful on probation or some other form of alternative sentencing is eminently reasonable and justified. The dismal prospects for rehabilitation of this defendant overwhelmingly favor an incarcerative sentence. See Tenn. Code Ann. § 40-35-102(5) (1997); see also Tenn. Code Ann. § 40-35-103(1)(C) (1997). The "ends of justice and the best interest of both the public and the defendant" simply cannot be served or advanced otherwise. Dykes, 803 S.W.2d at 259.

We find no error in the trial court's sentence, and the trial court's judgment is thereby affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE