IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 23, 2003

## STATE OF TENNESSEE v. CHRISTOPHER C. RIGSBY

**Appeal from the Circuit Court for Bledsoe County**
**No. 56-2001      Thomas W. Graham, Judge**

_____

**No. E2003-01329-CCA-R3-CD**
**December 29, 2003**
_____

The defendant, Christopher C. Rigsby, appeals from the Bledsoe County Circuit Court's denial of alternative sentencing following his conviction of aggravated assault. Because the record supports the trial court's ordering the defendant to serve the six-year sentence in the Department of Correction, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Edward L. Boring, Pikeville, Tennessee, for the Appellant, Christopher C. Rigsby.

Paul G. Summers, Attorney General & Reporter; Braden H. Boucek, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steven Strain, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The record reflects that on July 23, 2001, two Bledsoe County officers answered a disturbance call at the Hideway Lounge, where the bartender reported that the defendant had created the disturbance and had been asked to leave the bar. The officers found the defendant lying on the ground outside the bar, but when they approached, he ran into the nearby foliage. Initially, he declined to come out when the officers ordered him to do so. When one of the officers, however, turned his back to the defendant's location, the defendant charged the officer with a knife in his hand. The officer suppressed the attack by hitting the defendant with a flashlight, and after a struggle, the two officers subdued and arrested the defendant.

The defendant pleaded guilty to aggravated assault, a Class C offense. *See* Tenn. Code Ann. § 39-13-102(a)(1)(B), (d)(1) (2003) (aggravated assault, a Class C felony, is committed

by one who knowingly commits an assault and uses or displays a deadly weapon). He submitted the sentencing issues to the determination of the trial court.

At the sentencing hearing, the defendant, 36 years of age, testified that he had been married for six years. He had a four-year-old child; a thirteen-year-old child had recently been killed when a car fell from a jack onto the child. The defendant worked and supported his wife, his child, his stepson, and his mother-in-law, who suffered from cancer. The defendant testified that he had battled alcoholism since he was a young man, and that he had completed a treatment program in prison, as well as other residential treatment programs. He had completed a program between July 23, 2001, and the sentencing hearing, and he had not consumed alcohol in about a year. He admitted in his statement appearing in the presentence report that, on July 23, 2001, he had been taking medication for depression, and against medical instructions, he had consumed alcohol, which in combination with the medication caused him to be "psychotic." He stated that he did not remember the events of that evening and deferred to the officers' account of those events.

The defendant's wife testified at the sentencing hearing that the defendant was an episodic drinker who never drank at home. She knew that he was depressed and that he would go out and drink. She affirmed his positive contributions as a husband and father and testified that she and the family relied upon him for support.

Significantly, the presentence report revealed that prior to July 23, 2001, the defendant had garnered eight prior misdemeanor and four felony convictions. The felonies consisted of a 1987 robbery conviction and three convictions for escape. He had escaped twice from jail and once from prison. Because of the escapes, his robbery conviction parole was revoked three times. His misdemeanor convictions included an assault, and the defendant was on probation for DUI and possession of marijuana when he committed the aggravated assault that is the subject of the conviction now under review.

At the conclusion of the sentencing hearing, the trial court imposed a six-year sentence, which the defendant does not challenge on appeal. In addressing the manner of service of the sentence, the trial judge expressed concern about the defendant's family's plight, but the judge explained that his course of action was essentially determined by the nature and number of the defendant's prior convictions, including one which placed him on probation at the time he committed the instant offense.

On appeal, the defendant claims that the state failed to overcome the presumption that he was a favorable candidate for alternative sentencing. He claims entitlement to full probation or in the alternative, to a sentence of split confinement. We are unpersuaded and affirm the trial court's imposition of an incarcerative sentence.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003). This

presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the "conclusion of the sentencing hearing" and after determining the range of sentence and the specific sentence, then determines the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5) (2003); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." *Id.* § 40-35-102(5) (2003). Thus, a defendant who meets the above criteria is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the Act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

In that regard, the defendant, a Range I offender, enjoyed the presumption of favorable candidacy for alternative sentencing for his Class C felony. *See* Tenn. Code Ann. § 40-35-102(6) (2003). A sentence involving confinement is appropriate when

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is especially suited to provide an effective deterrence to others likely to commit similar offenses; or

-3-

(C) Measures less restrictive than confinement have frequently
or recently been applied unsuccessfully to the defendant.

*Id.* § 40-35-103(1)(A)-(C) (2003).

Moreover, the defendant was eligible for probation, *see id.* § 40-35-306(2) (2003); however, the defendant has the burden of establishing that he is entitled to full probation. *Id.* § 40-35-303(b) (2003); *State v. Mounger,* 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999). In evaluating a defendant"s bid for probation, the sentencing court appropriately examines such factors as (1) "the nature and [circumstances] of the criminal conduct involved," Tenn. Code Ann. § 40-35-210(b)(4) (2003); (2) the potential or lack of potential for rehabilitation, *id.* § 40-35-103(5) (2003); (3) whether a fully probated sentence would depreciate the seriousness of the offense, *id.* § 40-35-103(1)(B) (2003); and (4) whether a sentence other than full probation would effectively deter others likely to commit similar crimes, *id.*

We conclude that the defendant failed to demonstrate an entitlement to full probation. In particular, we discern that the potential for rehabilitation was not established. The defendant's history of escaping from lawful custody and his commission of the current offense while on probation belie his potential for rehabilitation.

Further, the record in this case amply demonstrates that the presumption of favorable candidacy for alternative sentencing in general was soundly rebutted by the defendant's extensive history of lawless behavior. *See* Tenn. Code Ann. § 40-35-103(1)(A) (2003) (confinement may be based on necessity to "protect society by restraining a defendant who has a long history of criminal conduct"). Also, the presumption was overcome by the defendant's being on probation when he committed the present offense. *See id.* § 40-35-103(1)(C) (2003) (confinement may be based upon the fact that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant").

We hold that the trial court's determination that the defendant should serve his sentence in the Department of Correction is supported by the record. As such, that determination is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-4-