# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs July 23, 2013

## STATE OF TENNESSEE v. STEPHEN MARK ADDLEBURG

**Appeal from the Criminal Court for Sullivan County**
**No. S56585     R. Jerry Beck, Judge**

---

**No. E2012-02211-CCA-R3-CD - Filed September 9, 2013**

---

Stephen Mark Addleburg ("the Defendant") was convicted by a jury of failure to provide proof of financial responsibility; possession of less than one-half ounce of marijuana; possession of a weapon by a convicted felon; and possession of a handgun while under the influence. Following a sentencing hearing, the trial court sentenced the Defendant to four years' incarceration. In this appeal, the Defendant contends that the trial court erred in denying his request for alternative sentencing. After a thorough review of the record and the applicable law, we affirm the judgment of the trial court. We remand the case solely for correction of clerical errors contained in the two misdemeanor judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Criminal Court Affirmed; Case Remanded**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Andrew J. Gibbons, Blountville, Tennessee, for the appellant, Stephen Mark Addleburg.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Barry Staubus, District Attorney General; and Josh Parsons, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Sullivan County Grand Jury indicted the Defendant in July 2009 for a violation of a habitual traffic offender order, failure to provide proof of financial responsibility, possession of less than one-half ounce of marijuana, possession of a weapon by a convicted

felon, possession of a handgun while under the influence, two counts of driving under the influence ("DUI"), and one count of driving under the influence eighth offense ("DUI 8th"). These charges arose out of an incident which occurred on March 6, 2009. The Defendant proceeded to a jury trial on the indicted offenses on July 25, 2012, at which the following proof was adduced:

On the evening of March 6, 2009, David Creasy was working at the Zoomerz gas station in Kingsport, Sullivan County, Tennessee. He observed an individual, whom he identified as the Defendant, attempting to stand up a motorcycle that was laying on its side in the roadway at one of the entrances to the station. He did not see the motorcycle involved in a wreck, and he did not see the Defendant "drop it or turn over with it or anything like that." He also never saw the Defendant drive the motorcycle and only saw him push the motorcycle into the parking lot. A customer at the station assisted the Defendant in pushing the motorcycle to a gas pump. Someone came into the station and paid for five dollars worth of gas for the motorcycle, but Creasy could not recall whether the Defendant was the individual who paid for it or whether it was the customer who helped him.

Creasy believed that the Defendant was intoxicated by "the way [he was] walking" and because he had slurred speech. Thus, Creasy called the police. Creasy did not turn on the gas pump for the Defendant to get gas for the motorcycle because the 911 dispatcher asked him to "stall" the individual until the police arrived. While Creasy was on the phone with the 911 dispatcher, the Defendant came inside the station to ask why the gas pump would not work. Creasy told the Defendant that "the gas pumps were messed up" and that Creasy would have to fix the pump. He further instructed the Defendant to move his motorcycle to a different pump and that he would try to get that one working. The Defendant told Creasy that he "better not be on the phone with the cops." Creasy never turned on the second pump.

Officer Matthew McGuire and Officer Matthew Aaron Pendleton, with the Kingsport Police Department ("KPD"), both responded to the scene. Officer McGuire arrived first and observed the Defendant standing next to a black motorcycle which was parked at a gas pump. The gas nozzle was already in the tank of the motorcycle. Officer McGuire pulled his patrol car behind the motorcycle, and the Defendant immediately walked toward the station. He followed the Defendant into the station and stopped him to "see why [he] was called there to investigate a possible intoxicated person."

Officer Pendleton arrived at the scene when Officer McGuire was following the Defendant into the station. When Officer Pendleton entered the station, Officer McGuire was attempting to speak with the Defendant. Both officers testified that they smelled alcohol on the Defendant's person and that he was "unsteady" on his feet. Officer Pendleton added

that he had slurred speech, appeared nervous and "fidgety," kept trying to reach into his pockets, and was "kind of aggressive." Officer McGuire described his demeanor as argumentative.

The Defendant admitted to Officer McGuire that he had consumed two to three beers. He told Officer McGuire that he had been at his house, which was less than one-half mile away. He did not say that anyone else had been with him.

Officer McGuire then patted the Defendant down for "officer safety." Although the Defendant denied having a weapon, Officer McGuire found a .22 caliber two-shot Derringer on the Defendant's person. Officer McGuire also found a small bag of green leafy substance on the Defendant's person. After placing the Defendant in his patrol car, Officer McGuire requested that he submit to a blood alcohol test, to which the Defendant agreed. The Defendant then signed an Implied Consent Advisement, agreeing to a blood alcohol test. Officer McGuire also ran the status of the Defendant's driver's license, and the results indicated that his license had been revoked because he was a habitual traffic offender. Officer McGuire took the Defendant into custody, and Officer Pendleton stayed at the scene to get the motorcycle towed. Neither officer observed the Defendant drive the motorcycle or attempt to put gas in it, and they did not attempt to start the motorcycle to determine whether it was operable.

The blood alcohol kit and the green leafy substance were sent to the Tennessee Bureau of Investigation ("TBI") to be tested. The TBI report reflected that the Defendant tested positive for .15% ethyl alcohol and that the green leafy substance was 1.4 grams of marijuana. A surveillance video filmed outside the station was played for the jury.

According to Johnnie Grills, a friend of the Defendant's family, Grills was the person driving the motorcycle that evening. Prior to the Defendant's arrest, Grills had been at the Defendant's residence and test drove the motorcycle earlier that day because the Defendant wanted to sell it. When Grills returned after the test drive, the Defendant wanted to go to Woodstone Deli. Grills drove the motorcycle, and the Defendant rode as a passenger. During the drive, the motorcycle started "pettering and puttering." The two of them began arguing over why the motorcycle was operating that way. At the intersection of Lebanon Road and Fort Henry Drive, the motorcycle "petered out and died." Grills tried to "crank" it several times to get it running again but could not. Grills and the Defendant began arguing again over why the motorcycle stopped running, and the Defendant continued to blame Grills, saying that he "popped the clutch." Grills "got very mad and [he] just walked off" because he knew that "it was coming down probably [to] a fight." The Defendant screamed at Grills that he needed to come back and help the Defendant, and the Defendant was "raising Cain" that he did not have a license and would get in trouble.

After deliberations, the jury found the Defendant guilty of failure to provide proof of financial responsibility, possession of less than one-half ounce of marijuana, possession of a weapon by a convicted felon, and possession of a handgun while under the influence. The jury set a $100 fine for the failure to provide proof of financial responsibility conviction; a $2,500 fine for the possession of less than one-half ounce of marijuana conviction; a $3,000 fine for the possession of a weapon by a convicted felon conviction; and a $2,500 fine for the possession of a handgun while under the influence conviction. The jury acquitted the Defendant of both counts of DUI. As a result, the State dismissed the DUI 8th charge.

At the sentencing hearing held later, the presentence report was admitted as an exhibit without objection.[1] The Defendant testified that he had been diagnosed with stage one lung cancer after he was convicted of the offenses in this case, and he introduced his medical records as an exhibit. The Defendant testified that, according to images taken of his chest, he had "a very large tumor in [his] chest cavity" that would require extensive surgery to remove. The Defendant testified about future scheduled appointments he had with a thoracic surgeon and other doctors regarding his recent diagnosis and treatment. The Defendant asked the trial court to consider his health issues, treatment, and doctor's appointments in determining his sentence. Specifically, he requested that the court grant him some type of house arrest or "ankle monitoring" so that he could continue his treatment. According to the Defendant, after the tumor was removed, he would most likely have to continue treatment with radiation or chemotherapy.

On cross-examination, the Defendant acknowledged that he was arrested on a new charge after his convictions in this case. The State introduced a certified copy of the new charge – false imprisonment, a misdemeanor. The Defendant agreed that he had at least three prior felony convictions. The State also asked the Defendant whether he could pay court costs and the monthly fee associated with an ankle bracelet or house arrest, as he had requested. He responded, "I'll pay as much as I can. I'm just surviving myself." Lastly, the State asked the Defendant whether his medical records indicated that the biopsy of the tumor revealed that is was "not malignant." The Defendant responded that the doctor "wasn't satisfied with the . . . biopsy" so he performed a "PET scan" after the biopsy. According to the Defendant, the PET scan showed "the first stages of cancer."

The trial court determined that the Defendant was a range II multiple offender, and defense counsel agreed. The court found one enhancement factor applicable, that the Defendant had a "prior record of criminal activity outside those necessary to establish the

_____

[1] The Defendant, during his testimony, argued that the assault charge in the presentence report was dismissed and that it was not a conviction. Accordingly, the trial court stated that it would not consider that offense.

range." The trial court also specifically noted that the Defendant had a "terrible" record. The trial court sentenced the Defendant to four years on his possession of a weapon by a convicted felon conviction; to eleven months, twenty-nine days on his possession of less than one-half ounce of marijuana conviction; and to eleven months, twenty-nine days on his possession of a handgun while under the influence conviction.[2] The court ordered these sentences to run concurrently, for an effective sentence of four years. The trial court also affirmed the fines set by the jury, as outlined above.

The court next determined that the Defendant would serve his four-year sentence in confinement, denying any alternative sentence. With regard to the Defendant's health situation, the trial court stated that it would make a strong recommendation that he be housed at the Tennessee Department of Correction's Lois DeBerry Special Needs Facility. It also stated that it would contact the jail nurse to inform her of the situation and that a copy of the Defendant's medical records should be provided to the jail to assist in transporting the Defendant to the Special Needs Facility.

The Defendant filed a motion for a new trial, which the trial court denied. On appeal, the Defendant contends that the trial court abused its discretion in denying the Defendant any form of alternative sentencing.

## Analysis

The Defendant challenges the trial court's denial of any form of alternative sentencing. Specifically, the Defendant contends that the trial court only considered the Defendant's prior record in making this determination and failed to consider the Defendant's "current serious health problems," prison overcrowding, or statistical information regarding similar convictions. The Defendant also argues that his sentence is not the "[l]east severe measure necessary to achieve the purposes for which the sentence [was] imposed." The Defendant raises no issues with respect to the length of his sentence.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682,

---

[2] The trial court specifically noted at the sentencing hearing that the percentage of the sentences to be served by the Defendant for both misdemeanors prior to eligibility for rehabilitation programs should be "zero on the judgment orders." However, the judgment order for each misdemeanor reflects "75%." Accordingly, the judgment orders for the Defendant's convictions for possession of less than one-half ounce of marijuana and possession of a handgun while under the influence should be amended to correct the clerical error. Those judgment orders should reflect 0% instead of 75%.

707 (Tenn. 2012). Thus, this Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008).

Our supreme court also has expressly held that the Bise standard of review is applicable to " questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 279-80 (Tenn. 2012). Thus, in reviewing a trial court's denial of full probation, the applicable standard of review is abuse of discretion with a presumption of reasonableness so long as the sentence "reflect[s] a decision based upon the purposes and principles of sentencing." Id. The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.; see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In making its sentencing determination, a trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in [Tennessee Code Annotated sections] 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2006). The trial judge also should consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5) (2006).

When a court determines the manner of service of a sentence, a defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann § 40-35-102(6)(A) (Supp. 2007). However, the trial court is not bound by this advisory sentencing guideline; rather, it "shall consider" it. Id. § 40-35-102(6)(D). The defendant bears the burden of establishing his or her suitability for full probation. See Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)); State v. Mounger, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" Carter, 254 S.W.3d at 347 (citations omitted).

As stated above, the Defendant challenges the trial court's denial of alternative sentencing. In determining whether to deny an alternative sentence, the trial court should consider the following:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2006); see also Carter, 254 S.W.3d at 347. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(2), (4). A trial court also should consider a defendant's potential for rehabilitation or lack thereof when determining the manner or length of the sentence. Id. § 40-35-103(5).

In this case, we discern no error regarding the trial court's denial of alternative sentencing. First, as acknowledged by the Defendant, he is a range II multiple offender. Therefore, he does not meet the criteria for a favorable candidate for alternative sentencing pursuant to Tennessee Code Annotated section 40-35-102(6)(A). Second, the trial court discussed the Defendant's extensive prior criminal record, which is supported by the presentence report, in denying an alternative sentence. As noted by the trial court, the Defendant's prior record includes: seven DUI convictions; numerous traffic-related convictions; numerous drug possession convictions; numerous public intoxication

convictions; three driving on a revoked license or driving with license suspended convictions; two habitual traffic offender convictions; two cocaine trafficking convictions; two unlawful drug paraphernalia convictions; two possession of marijuana convictions; and one driving while impaired conviction. Thus, "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct." Tenn. Code Ann. § 40-35-103(1). Third, the trial court clearly concluded that the Defendant was a poor candidate for rehabilitation. In reviewing the presentence report, the trial court noted that the Defendant previously had failed to comply with the conditions of a sentence involving release into the community and also had been arrested on a new charge after being convicted of the offenses in this case.

Lastly, contrary to the Defendant's argument, the trial court clearly also took into consideration the Defendant's current health situation. It specifically noted that it would make a strong recommendation that the Defendant be housed at the Tennessee Department of Correction's Lois DeBerry Special Needs Facility. The court also stated that it would contact the jail nurse to inform her of the situation and that a copy of the Defendant's medical records would be provided to the jail to assist in transporting the Defendant to the Special Needs Facility.

Accordingly, the trial court denied any form of alternative sentencing in a manner consistent with the purposes, principles, and goals of the Sentencing Act. Thus, the trial court did not err in ordering the Defendant to serve his four-year sentence in confinement.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the trial court. We, however, remand this matter for the correction of clerical errors contained in the judgments for the possession of less than one-half ounce of marijuana conviction and the possession of a handgun while under the influence conviction. The judgments for those convictions should be amended to reflect that the percentage of the misdemeanor sentences to be served in actual confinement by the Defendant is 0% instead of 75%.

_____
JEFFREY S. BIVINS, JUDGE