IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2009

## STATE OF TENNESSEE v. MICHELLE BISHOP

**Appeal from the Circuit Court for Sullivan County**
**Nos. S51,057; S52,581; and S52,582    R. Jerry Beck, Judge**

---

### No. E2009-00404-CCA-R3-CD - Filed December 18, 2009

---

The defendant, Michelle Bishop, pleaded guilty in the Sullivan County Circuit Court to three counts of theft of property valued at $500 or less, one count of theft of property valued at $1,000 or more but less than $10,000, two counts of identity theft, two counts of forgery, and one count of failure to appear in exchange for an effective sentence of five years with the manner of service of the sentence to be determined by the trial court. The trial court ordered a fully incarcerative sentence, and the defendant now appeals, claiming she should have been granted probation or other alternative sentencing. Discerning no error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Joseph F. Harrison, Assistant District Public Defender, for the appellant, Michelle Bishop.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On February 1, 2007, the defendant, Michelle Bishop, entered pleas of guilty in case number S51,057 to two counts of theft of property valued at $500 or less, two counts of identity theft, two counts of forgery, and one count of theft of property valued at $1,000 or more but less than $10,000. She also entered pleas of guilty in case number S52,581 to one count of failure to appear and in case number S52,582 to one count of theft of property valued at $1,000 or more but less than $10,000. Pursuant to a plea agreement with the State, the defendant received an effective sentence of five years with the manner of service of the sentence to be determined by the trial court following a sentencing hearing. In addition to these charges, the defendant pleaded guilty in case number S52,497 to one count of failure to appear in exchange for a one-year suspended sentence to be served consecutively to the five-year effective sentence at issue in this case and in case number S52,583 to

one count of theft of property valued at $500 or less in exchange for a suspended sentence of 11 months and 29 days to be served concurrently to the sentence imposed in case number S52,497. The State recited the following stipulated facts at the guilty plea acceptance hearing:

> Concerning first Case #S51057, on July the 29th of 2005 Ms. Felicia Wagoner was approached by the [d]efendant at the Conoco Market on East Stone Drive. The [d]efendant asked Ms. Wagoner if she would give her a ride home to the Kingsport Manor. Ms. Wagoner agreed to.

> While Ms. Wagoner drove [the defendant] to that residence[,] [the defendant] took Ms. Wagoner's red Gucci wallet out of her purse that was [lying] in the floorboard without being detected by Ms. Wagoner.

> At approximately 6:40 the next day [the defendant] arrived at the Walgreens Pharmacy and purchased $139.68 worth of merchandise with one of Ms. Wagoner's checks which had been forged and signed . . . allegedly by Ms. Wagoner with it not being with the consent of Ms. Wagoner, along with the Tennessee driver's license of Ms. Wagoner being placed on the desk. There was a videotape of this.

> At approximately 6:55, 15 minutes later, [the defendant] went to the Big Break Exxon on West Stone Drive and again wrote a check in the amount of $71.99 from Ms. Wagoner's stolen checkbook, signed Ms. Wagoner's name, and took the merchandise. Once again video evidence was obtained.

> . . . .

> Ultimately [the defendant] was advised of her constitutional rights per the *Miranda* decision and waived those rights and gave a statement confessing to her involvement in the case.

> Concerning S52581, the failure to appear, [the defendant] failed to appear in the general sessions court on May the 28th of 2006 to answer charges to the felony offense of theft over $1,000. She had been released on bond on the condition that she appear in court on that date.

> . . . .

> S52582 concerning theft over $1,000, Detective Chris Tincher found, upon investigation, that Annie Sams, a resident of E6

-2-

> Kingsport Manor Apartments reported that someone stole approximately $1600 of jewelry from her bedroom. She stated that [the defendant] was in her residence during the time of the theft. Detective Chris Tincher interviewed [the defendant], who confessed that she had stolen the jewelry of Ms. Sams without her consent.

The trial court accepted the plea agreement, entered the guilty pleas, and ordered the preparation of a presentence report.

At the February 26, 2009 sentencing hearing, the 41-year-old defendant testified that she was living with her mother and her two daughters, ages 13 and 17. She stated that she had graduated from high school and completed training to become a certified nursing assistant, although she no longer held her nursing assistant's license at the time of the hearing. At the time of the hearing, the defendant was working at a McDonald's restaurant. The defendant rated her health as fair, noting that she suffered from high blood pressure, degenerative disk disease, fibromyalgia, rheumatoid arthritis, a slipped disk, a bulging disk, and a pinched nerve. The defendant admitted that she had a lengthy criminal history but attributed the majority of her convictions to her quest to obtain money to purchase cocaine, which she agreed was her "drug of choice" and which she claimed "ruined [her] life."

The defendant testified that following her guilty pleas in this case, her probationary sentence in Scott County, Virginia, was revoked, and she was ordered to spend nearly two years in jail in Virginia. In addition, she had served "[a]lmost seven months" in the Sullivan County jail. The defendant stated that her time in jail had "[c]hanged her life" and allowed her to finally conquer her cocaine addiction. She claimed that she had been able to reunite with her family and that she had participated in a program called Families Free, which provided substance abuse counseling and parenting classes. The defendant stated that during her incarceration in Virginia, she had been employed as a "pod cleaner," allowing her to "work[] off about $3,000 worth of court costs and fines."

The defendant testified that following her release in Virginia, she returned to Tennessee and was released on bond. She stated that she was "ashamed" of her "horrible" criminal record and claimed that she "needed some time to sit and think." The defendant said that she was "a totally, totally different person" following her incarceration. The defendant asked the court "for a chance to be on probation" to establish that she had "changed" and that she could "do right."

During cross-examination by the State, the defendant admitted that she had been prescribed "hydrocodone," "anatryptaline," and "zanaflex" for her various health issues. She denied any illegal drug use.

Lisa Tipton, the defendant's counselor with the Families Free program, testified that the defendant had been "very receptive" to the help offered through the program and that she had "demonstrated the ability to take responsibility for the mistakes that she's made." Ms. Tipton stated that she believed the defendant to "be a very good candidate for probation with support."

Reba Bishop, the defendant's mother, testified that the defendant had changed a great deal following her incarceration in Virginia. She explained that the defendant was "doing her very best" to be a mother to her children. She stated that she had seen no evidence that the defendant had been using drugs. Ms. Bishop testified that she believed the defendant to be a good candidate for probation.

The presentence report, filed as an exhibit by the State, established that the defendant had 24 prior convictions, including three convictions of criminal trespass, seven convictions of theft, three convictions of violation of the driver's license law, three convictions of assault, two convictions of possession of illegal drugs, three convictions of forgery, one conviction of vandalism, one conviction of uttering a worthless check, and one conviction of public intoxication. In addition to her record of criminal convictions, the defendant had 11 separate charges of uttering worthless checks dismissed upon the payment of the checks and the court costs.

At the conclusion of the testimony, the trial court noted that the defendant "since age 32 has just been basically in trouble up until she was incarcerated." The court also observed that the defendant had "a prior history of violent offenses" and "a lengthy record of convictions." The court concluded that the defendant's family support favored a grant of probation but determined that the defendant's "continuous problems, continuous probations" weighed in favor of a denial of probation or other alternative sentencing. The court stated that it was "of the opinion that, just reading her prior record, that she'd likely commit new crimes if released. Considering her record of prior failure on probation, there's a likelihood she'd reoffend in regards to probation." The court concluded that probation was not "in the best interest of the State or the [d]efendant." As such, the court ruled that the defendant would "be required to serve [her] sentence."

In this appeal, the defendant contends that the trial court erred by denying her probation or other alternative sentencing. The State contends incarceration was appropriate.

When considering a challenge to the manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). Our case law has long held that the presumption of correctness "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Carter*, 254 S.W.3d at 344; *Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

With regard to the defendant's Class E felony convictions in cases S52,581 and S52,582, she is considered a favorable candidate for alternative sentencing. *See* T.C.A. § 40-35-102(6) (2006). "[F]avorable status consideration," however, does not equate to a presumption of such status. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). With regard to her Class E felony conviction in case number S51,057, she is presumed to be a favorable candidate for alternative sentencing. *See* T.C.A. § 40-35-102(6) (2003).[1] Under each standard, sentencing issues are determined by the facts and circumstances presented in each case. *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

As the recipient of a sentence of ten years or less, the defendant is also eligible for probation. *See* T.C.A. § 40-35-303(a). She bore the burden, however, of establishing her "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b); *State v. Bingham*, 910 S.W.2d 448, 455-56 (Tenn. Crim. App. 1995), *overruled in part on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). A defendant seeking full

---

[1]The offenses in case number S51,057 took place prior to the effective date of the 2005 amendments to the Sentencing Act. No waiver of the defendant's ex post facto protections and request to be sentenced under the 2005 amendments appears in the record.

probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956)), *overruled on other grounds by Hooper*, 29 S.W.3d at 9-10. Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

As for the defendant's misdemeanor sentences, the sentencing court is afforded considerable latitude. *See, e.g.*, *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). Misdemeanor sentences must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. T.C.A. §§ 40-35-104, -302 (2006); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75 percent of the sentence should be fixed for a misdemeanor offender. *Palmer*, 902 S.W.2d at 393-94. A convicted misdemeanant has no presumption of entitlement to a minimum sentence. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). The misdemeanor sentencing statute requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d) (2006); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998).

Here, the defendant's record of criminal convictions and criminal activity spanned more than a decade and included numerous convictions of the same character as those at issue in this case. *See* T.C.A. § 40-35-103(1)(A) ("Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct . . . ."). The record establishes that in addition to her record of criminal convictions and criminal behavior, the defendant was the recipient of numerous probationary sentences in the past and that she violated the terms of her probationary sentence in Scott County, Virginia by committing the instant offenses. *See id.* § 40-35-103(1)(C) ("Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . ."). The record also establishes that the State agreed to allow the defendant to serve two sentences on probation consecutively to the five-year sentence imposed in this case and that the State allowed most of the defendant's nine convictions to be served concurrently. *See State v. Dwayne Anthony Dixon*, No. E2007-02237-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, Aug. 26, 2008) ("A sentencing court may consider a defendant's enjoyment of leniency . . . in awarding or rejecting alternative sentencing options."). Under these circumstances, the trial court did not err by ordering the defendant to serve her sentence in confinement.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE