# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 1, 2009 Session

## STATE OF TENNESSEE v. ANDOR WILLIAMS

### Direct Appeal from the Criminal Court for Shelby County
No. 08-00983     John T. Fowlkes, Jr., Judge

_____

### No. W2009-00818-CCA-R3-CD  -  Filed May 27, 2010

_____

A Shelby County jury convicted the defendant, Andor Williams, of one count of possession with intent to sell marijuana and one count of possession with intent to deliver marijuana. The trial court merged the convictions and sentenced the defendant, as a Range II multiple offender, to serve a four-year sentence in the workhouse. On appeal, the defendant argues that the evidence at trial was insufficient to sustain his conviction and that the trial court erred when sentencing him. After reviewing the record, the parties' briefs, and applicable law, we affirm the judgment of the Shelby County Criminal Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

William C. Gosnell, Memphis, Tennessee, for the appellant, Andor Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Background

A Shelby County grand jury indicted the defendant, Andor Williams, on one count of possession with intent to sell marijuana and one count of possession with intent to deliver marijuana. The Shelby County Criminal Court held a jury trial February 9 -11, 2009, and the parties presented the following evidence.

Officer Brad Deckard, with the Memphis Police Department, testified that on July 24, 2007, he was on uniform patrol with his partner, Officer Selygna Brown. The officers were at the intersection of Lamar Avenue and South McLean Boulevard when they saw the defendant pulling into "a cove [at] the southwest corner of Lamar and McLean." The cove had "three houses on the west side and on the east side [there was] just a fence line." Officer Deckard said that maybe one or two cars were parked along the curb, and "there was one car in the middle of the road." The defendant and a passenger, who Officer Deckard believed to be the defendant's girlfriend, were in the car in the middle of the road. Officer Deckard explained that the defendant had backed the car into the cove facing Lamar Avenue. According to Officer Deckard, that area was "known to be a high drug trafficking spot . . . because it's kind of out of view. . . ."

Officer Deckard said that "something just didn't seem right," so the officers pulled into the cove, along the right side of the defendant's vehicle, and walked up to the vehicle. The windows on the vehicle were down, and the officers smelled marijuana "pretty much as soon as [they] got out of the car" and began to walk over there. Officer Deckard had the opportunity to smell marijuana and cigarette smoke during his tenure as a police officer, and he said that the odor coming from the vehicle "smelled like in [his] past experience what . . . had been marijuana." Officer Deckard asked the defendant for his driver's license, and Officer Brown went to the passenger side of the vehicle. The defendant told Officer Deckard that he only had an identification card because his driver's license was suspended. Officer Deckard requested that the defendant exit the vehicle and arrested the defendant for driving with a suspended license.

When the defendant exited the vehicle, Officer Deckard saw "little baggies of . . . a green leafy substance that looked like marijuana and then half of what look[ed] like a brown cigarette or brown cigar that was sitting beside it on the passenger front floorboard." Officer Deckard testified that the marijuana was in nine separate plastic bags "like it was ready to sell like you'd commonly see on the street." Officer Brown asked the passenger to exit the vehicle, and the defendant told the officers that the drugs were his. According to Officer Deckard, the defendant said that he was "just trying to take care of [his] kids." Officer Deckard took the defendant back to his car, ran the defendant's vehicle tags, and discovered that the vehicle was unregistered. Officer Deckard searched the vehicle and found a license plate, which did not belong to any vehicle, in the trunk. The passenger had a valid driver's license, and the officers released the car, which they believed to be hers, to her. Officer Deckard transported the defendant, and Officer Brown turned the items taken from the vehicle into the property room. On cross-examination, Officer Deckard testified that he did not test or weigh the marijuana. He also did not see the defendant sell any drugs.

Officer Brown testified that she was working with Officer Deckard on July 24, 2007, when they encountered the defendant. She was in the passenger seat of the patrol vehicle and

noticed two vehicles, facing different directions, parked side by side on a dead end street. She said that the vehicles were on the side of the street without the houses. Officer Brown testified that she saw "a male black leaning over into the defendant's vehicle and . . . smoke coming out of the vehicle . . . ." She told Officer Deckard to drive over to where the man was, and the man that was leaning into the defendant's vehicle got in his car and left the scene.

Officer Brown got out of the patrol car and walked over to the passenger side of the vehicle. When she approached the vehicle, she noticed "a strong smell of marijuana emitting from the vehicle . . . ." After they asked the vehicle occupants to exit, Officer Brown heard the defendant tell the police officer that his license had been suspended, and he only had an identification card. While she was pulling the passenger from the vehicle, Officer Brown saw nine baggies of what appeared to be marijuana on the passenger side floorboard and a "blunt" in the ashtray between the front seats. Officer Brown had the passenger go to the curb, and the defendant said the marijuana was his and not the passenger's. She said that the defendant's statement was not in response to a question. She testified that the defendant also said that he was "struggling to support [his] kids." After the officers patted the defendant down, they placed him in the squad car. She said that they did not arrest the passenger because the defendant "took the blame for it. He said she didn't have anything to do with it. It was his." Officer Brown later testified, on cross-examination, that she did not see the defendant sell any drugs.

Officer Brown took the items from the vehicle to the police station at 201 Poplar Avenue. She had the substance tested and placed it in the property room. She said the procedure was for the people in the property room to take the envelope, test and weigh the substance, place it in an evidence bag, and seal the bag. She was present while they conducted a field test, and she saw the results. After they field tested the items, she left the property room; however, the substance remained at the facility. At trial, she identified the envelope that contained a "blunt" and the substance, which had tested positive as marijuana, and the state entered the envelope into evidence.

Delinda Franklin, with the Memphis Police Department Organized Crime Unit, testified that she took the evidence in this case from the property room to the Tennessee Bureau of Investigation ("TBI") for testing on November 19, 2008. TBI Special Agent Forensic Scientist Melanie Johnson testified, as an expert, that she tested the evidence in this case on December 17, 2008. She stated that the evidence consisted of 16.3 grams of marijuana and one hand-rolled marijuana cigar. According to Ms. Johnson, it was TBI's policy to count cigarettes and cigars rather than weigh them. Ms. Johnson said that the evidence bag contained "a total of [eleven] clear plastic bags." She further said that she only tested seven of those bags "because the cut off is 14 grams." She explained that

once [she reached] the cut off, [she] just [stopped] because the additional four bags, the total gross weight . . . was only 6.3 grams. So [she] didn't have to weigh the additional four bags or test . . . the additional four bags because it's not going to get [her] to the next cut off which is 10 pounds.

Ms. Johnson did a microscopic examination and a chemical color change test on seven of the bags and found that the bags contained marijuana. Although Ms. Johnson did not do a microscopic examination of the 6.3 grams contained in the four remaining bags, she weighed them to determine if they would move the weight to the next cut off level for charging the defendant. She testified that the four untested bags were consistent with the seven bags that she tested. Ms. Johnson tested the cigar and found that it contained marijuana.

The defendant, Andor Williams, testified the marijuana contained in the evidence bag was his, and he was smoking marijuana on July 24, 2007. He denied that he intended to sell the marijuana and that he told the officers he had the marijuana because he was trying to take care of his kids. The defendant said that he intended to eventually smoke the marijuana that the police officers seized.

On cross-examination, the defendant stated that he was thirty years old and had four kids. He stated that he did not know where the officers got the idea that he was selling marijuana to take care of his kids. He further stated that he did not know the officers and agreed that they would not have known that he had kids. The defendant had no previous problems with the officers and did not recognize them at the trial.

The defendant said that he went into the dead end cove to turn around, and "[b]y the time [his] car turned around, [the police officers] had pulled in front of him." The defendant denied that a vehicle was beside his and said that the man at the window was his uncle. The defendant agreed that he and the passenger were sitting in the car smoking the marijuana, and his uncle was smoking the "blunt" with him. According to the defendant, he purchased the marijuana packaged in little baggies. The defendant did not have rolling papers for the marijuana when the officers arrested him; however, he said that he had cigars in the car. The defendant admitted that on July 24 he had a suspended license and was driving a car that had a "bad tag." He further admitted that he had previous convictions for two aggravated burglary offenses, three thefts of property offenses, one failure to answer. The defendant said that "[b]eing convicted in these past situations, [he] knew that [he] had committed those crimes that's why [he] pleaded guilty." The defendant testified that in this case, he could not "plead guilty to something that [he knew he] didn't have no [sic] intention [of] doing." He denied committing the thefts and robberies to support his kids and said that he did those crimes to support his drug habit.

-4-

After deliberating, the jury found the defendant guilty of unlawful possession of a controlled substance with intent to sell, and unlawful possession of a controlled substance, with intent to deliver. The defendant timely appealed.

**Analysis**

On appeal, the defendant challenges the sufficiency of the convicting evidence and his sentence.

1. *Sufficiency of Evidence*

The first issue the defendant raises is the sufficiency of the convicting evidence. Specifically, the defendant contends that the state did not present evidence of the sale of the marijuana, the defendant's intent to sell the marijuana, or that the defendant knowingly possessed the marijuana. The state responds that "the jury could properly infer that the defendant did not intend to use the drugs personally, as he asserted, but possessed the drugs with the intent to either deliver or sell them." We agree with the state.

It is well established that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans,* 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see also* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given to the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The jury convicted the defendant of possession with intent to sell or deliver. To obtain the conviction, the state had to prove beyond a reasonable doubt that the defendant knowingly "[p]ossess[ed] a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id.* § 39-17-419; *see also State v. John Fitzgerald Belew*, No. W2004-01456-CCA-R3-CD, 2005 WL 885106, at *5 (Tenn. Crim. App. at Jackson, Apr. 18, 2005) (concluding that "this statute permits the jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together").

Examining the evidence in the light most favorable to the state, we conclude that the evidence is sufficient to support the defendant's convictions. When the officers searched the vehicle that the defendant was driving, they found marijuana packaged in several individual baggies. Officer Deckard testified that marijuana packaged in this manner was consistent with marijuana used in drug sales. Both officers testified that the defendant claimed the marijuana and said that he was trying to support his kids. The jury obviously accredited the testimony of the police officers. We conclude that the jury could properly infer that the defendant possessed the marijuana with the intent to sell or deliver it. Accordingly, the defendant is without relief as to this issue.

*2. Sentence*

Next, the defendant argues that the trial court erred when it sentenced the defendant. The defendant asserts that "considering his age, prior criminal history, and potential for rehabilitation or treatment," the trial judge should have found him "eligible for drug dependency treatment or some other form of alternative program." The state contends that the record support the sentence imposed by the trial court.

A challenge to the length, range, or manner of service of a sentence requires this court to conduct a "*de novo* review . . . with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The burden of showing the impropriety of a sentence is on the defendant. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *Ashby*, 823 S.W.2d at 169. In determining whether a defendant has overcome the burden, this court considers the following: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing

-6-

alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any statutory mitigating or enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement made by the defendant regarding sentencing. Tenn. Code Ann. §§ 40-35-102 -103, 210; *see Ashby*, 823 S.W.2d at 168.

The crime for which the jury convicted the defendant occurred on July 24, 2007, after the enactment of the 2005 amendment to our sentencing law. The 2005 sentencing amendment deleted the sentencing provision granting a defendant a presumptive favorability for an alternative sentence. Under the 2005 amendment, a defendant convicted of a Class C, D, or E felony and sentenced as a standard or mitigated offender "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Evidence to the contrary may be established by showing that:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

*Id.* § 40-35-103(1)(A)-(C). However, the statute specifically states that "[a] court shall consider, but is not bound by, this advisory sentencing guideline." *Id.* § 40-35-102(6).

In making its determination, the trial court shall also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. *Id.* § 40-35-210(b)(5) (2006); *State v. Boston,* 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); *Boston*, 938 S.W.2d at 438.

Because the jury convicted the defendant of a Class E felony, his sentence was ten years or less, and the statute did not specifically exclude the offenses for which the jury convicted him, he was entitled to be considered as a favorable candidate for an alternative sentence. *See* Tenn. Code Ann. § 40-35-102(6), -303(a) (2006).

Although probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." *Id*. § 40-35-303(b) (2006), Sentencing Comm'n Cmts; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). Rather, a defendant is required to establish his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); Tenn. Code Ann. § 40-35-303(b). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

From the record, we glean that the trial court imposed a sentence of confinement based primarily on the finding that the defendant had an extensive history of prior convictions and criminal behavior and a poor history when courts granted him alternative sentencing. *See* Tenn. Code Ann. § 40-35-103(1)(A), (C). The trial court also found that the defendant's testimony that he wanted to seek treatment for his drug problem was not credible. In denying the defendant's request for alternative sentencing, the trial court stated that "the expectation with regard to rehabilitation . . . is poor in light of [the defendant's] track record . . . ." The court noted that had the defendant been an adult when he committed several of his juvenile offenses, the offenses would have resulted in felony charges and convictions. Upon review, we note that the defendant's presentence report shows a history of criminal conduct beginning with juvenile adjudications as early as 1991. The defendant continued to accrue criminal offenses until the present case. Therefore, the record supports the court's denial of alternative sentencing, and we discern no abuse of discretion in the court's sentence of confinement. The defendant is not entitled to relief on this issue.

## Conclusion

Based on the foregoing, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE

-8-