# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 27, 2010 Session

## STATE OF TENNESSEE v. JOSEPH DANIEL DREW

**Appeal from the Criminal Court for Knox County**
**No. 87424     Bob R. McGee, Judge**

**No. E2009-01662-CCA-R3-CD - Filed July 20, 2010**

The defendant, Joseph Daniel Drew, appeals the Knox County Criminal Court's denial of probation on his 12-year effective sentence for guilty-pleaded convictions of robbery and attempted aggravated robbery. Discerning no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and J.C. MCLIN, J., joined.

Jerry P. Black, Jr., Knoxville, Tennessee, for the appellant, Joseph Daniel Drew.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leon Franks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 10, 2008, the defendant, originally charged with three counts of aggravated burglary, two counts of aggravated robbery, two counts of attempted aggravated robbery, and four counts of aggravated assault, pleaded guilty in the Knox County Criminal Court to one count of robbery and one count of attempted aggravated robbery. Pursuant to a plea agreement with the State, the defendant received two consecutive six-year sentences for a total effective sentence of 12 years with the trial court to determine the manner of service of the sentence. The facts of the offenses, as summarized by the State during the plea submission hearing, are as follows:

[O]n January the 12th of 2007, . . . . Tyler Carroll stated that he and the witness Matthew [Davenport] were in a room located in the downstairs section of [6209 Henry Lane]. They heard a knock on the sliding glass door, which leads into his room from the carport. He said he looked out the carport area and s[aw] a black male who he knew as Joe Drew that he said was there with two other black males. He said that Mr. Drew was armed with a chrome and black rifle style firearm, which he made reference to as a .9 millimeter.

He said they came into the room demanding his wallet and money, and they wanted him to go upstairs. The other men who were with him proceeded upstairs to demand - - and demanded the wallet from Terry Phillips. They attempted to take that, but did not.

They left. The police were called. They subsequently, after finding out that Tyler Carroll knew the defendant and knew where he lived, the officers went over there. They decided to do a knock and talk at that address. There was a green Ford Crown Victoria parked in front of the address with the engine still being warm on that. . . .

Officer Greg McKnight with the police department responded there, he obtained consent to search the Ford Crown Victoria that the proof had mentioned had belonged to Herman Drew, who is . . . the defendant's [brother]. Mr. Herman Drew is one of the individuals downstairs. They followed the officers to the vehicle and in the trunk of that vehicle they located a highpoint .9 millimeter long barrel firearm, which was chrome and black as described by the victim in the case.

Mr. Herman Drew denied any knowledge of that. The statement from one of the defendants in the case – all three of the defendants were arrested. Two of them pled guilty in juvenile court, was that there had previously been an argument, apparently, between Tyler Carroll and [the defendant], and that the reason they were going over there initially was to shoot him, but they made the decision to rob him instead.

-2-

There would be further proof that none of the property that was taken was taken with consent of the victims, or the attempted taking.

Based upon these facts, the trial court accepted the defendant's guilty pleas and imposed the agreed sentence of 12 years. The court also agreed to hold a hearing on the defendant's suitability for probation and to determine the amount of restitution owed the robbery victim.

At the July 10, 2009 probation hearing, the defendant challenged the accuracy of his criminal record as contained in the presentence report. Counsel explained,

[T]he only record [the defendant] has, he has a former burglary when he was a juvenile. That's the only felony. And then there's this charge . . . where he was transferred from Juvenile Court to adult criminal court.

Before that he had one other assault charge, but that was handled informally in juvenile court back in . . . 2004. And then there were a couple of runaways and truancies, which those would all be unruly cases.

Counsel claimed that, according to a 2006 psychological evaluation, the defendant "grew up in a dysfunctional family" where he "suffered extreme neglect." The defendant "was classified as having a learning disability," and other testing established an intelligence quotient of 77, "which puts him in the borderline range." Counsel stated, "He suffers from depression, dependence, and he has an unspecified personality disorder." Defense counsel acknowledged that the defendant had been charged with committing another robbery and burglary while he was on bond and that the case had been bound over to the grand jury, but he claimed that "there's a real question about the identification of [the defendant] if he was there, when he wasn't in the house, nor did he participate in the burglary." Counsel claimed that the defendant's "crime is the product of limited life skills" and argued that the defendant should be given "[a] chance to prove that he can complete 12 years of law abiding conduct under the supervision of the State and this [c]ourt."

The State argued that the defendant's previous juvenile conviction of burglary and that he was charged with yet another burglary while on bond in this case were indicative of a pattern of criminal behavior. The State observed that the victim of the most recent burglary clearly identified the defendant, with whom the victim had attended high school, as one of perpetrators. The State also noted that the 2006 psychological evaluation indicated that the defendant had largely overcome his previously diagnosed learning disability. As to

the circumstances of the offenses in this case, the prosecutor stated that the defendant admitted that he saved money from the paycheck he earned while working at a McDonald's restaurant for the specific purpose of buying a gun with which to threaten the victim because the victim had "called him stupid after they had gotten into an argument over a pack of cigarettes." The State contended that placing the defendant on probation for such a premeditated and deliberate crime, particularly when the defendant had a pattern of committing burglaries, would depreciate the seriousness of the offenses. The State also argued that probation was not appropriate because "his having been confined before in Juvenile Court taught him absolutely nothing." Finally, the State noted that "[t]here's a hold on [the defendant] from another county" based upon his failure to pay child support.

At the conclusion of the hearing, the trial court observed that "[t]his [was] a very troubling case" and that it had "spent a lot of time working on this." The court stated that it had reviewed the psychological report submitted by the defendant as well as a report from the Community Alternative to Prison Program ("CAPP") and the presentence investigation report. The court expressed sympathy for the defendant's difficult childhood and concern about the lengthy sentence, but it also noted that it had "an obligation to the community." The court concluded that "there's substantial evidence" that the defendant committed the burglary with which he was charged while on bond in this case. The court also found that the defendant had problems with anger that "cause[d] him to lash out impulsively" along with "problematic personality trends [and] rapid and extreme mood swings." The court observed that in addition to procuring a gun in this case, the defendant "while applying for probation [was] caught inside somebody else's house in an effort to get . . . what everybody acknowledges was a safe or depository for guns. So anger and guns and home invasion are characteristic of" the defendant.

The court noted that although the defendant "could benefit from psychotherapy or psychological help of some sort," the court was without the resources to place the defendant in "a secure facility where he can be kept 24/7, and be kept away from guns and away from drugs, and be kept where he cannot invade other people's homes." The court observed that although "enhanced forms of probation" were available, "all three probation agencies have interviewed [the defendant] and have reported to the [c]ourt and all three find themselves incapable of addressing [the defendant's] needs." That being said, the court concluded that it could not "in good consci[ence] turn [the defendant] out into the public with him in the condition he's in. He's an angry man who's willing to use firearms. And he's developed a habit of breaking into people's homes, and nothing is changing." Based upon this conclusion, the court denied the defendant's application for probation.

In this appeal, the defendant contends that the trial court erroneously denied probation based upon the defendant's being charged with burglary while on bond for the

offenses in this case. The State asserts that "several other factors support the defendant's confinement, including, most notably, the seriousness of the offenses, the court's need to protect the public, the three probation agencies' rejections and at least one previously unsuccessful stint on probation." We agree with the State.

When considering a challenge to the manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). Our case law has long held that the presumption of correctness "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Carter*, 254 S.W.3d at 344; *Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

As the recipient of individual sentences of ten years or less, the defendant is also eligible for probation. *See* T.C.A. § 40-35-303(a). He bore the burden, however, of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956)), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

In addition to these considerations, a trial court considering probation or other alternative sentencing should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1)(A).

The defendant contends that the trial court erroneously denied him probation on the basis of his incurring new charges while on bond in this case. To the extent that the trial court relied upon these new charges in the absence of a finding by a preponderance of the evidence that the defendant had actually committed the offenses, such reliance was misplaced. Before a sentencing court may rely upon the defendant's incursion of new charges not yet reduced to convictions, the court must find by a preponderance of the evidence that the defendant committed the offenses with which he has been charged. *See State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (stating that "facts relevant to sentencing must be established by a preponderance of the evidence"). Although the trial court noted on several occasions that "substantial evidence" supported a finding that the defendant had committed the subsequent home invasion robbery, the court's findings fell short of a conclusion by a preponderance of the evidence. In consequence, our review is de novo with no presumption of correctness afforded to the trial court.

Even under de novo review, however, the record supports the denial of probation in this case. The eighteen-year-old defendant had a history of juvenile criminal adjudications including adjudications of aggravated burglary, an offense similar to that charged in this case, and joyriding. We find, as did the trial court, that the similarity between the previous aggravated burglary offense and the instant offenses raises a serious question about the defendant's amenability to correction.

The presentence investigation report reflects that the defendant violated a probationary sentence imposed by the juvenile court for his aggravated burglary adjudication. In addition, the record establishes that on December 1, 2008, the defendant's bonding company asked to be relieved from the defendant's bond based upon his failure "to stay in contact with the Bonding Company" and the defendant's failure "to perform any of his obligation under his contract." Further, on March 20, 2009, the trial court ordered the defendant held without bond based upon his failure "to report to State Probation Office for pre-sentence investigation report." That the defendant refused to comply with the conditions of a previous probationary sentence, the bond issued in this case, and an order of the court to report to the probation office, indicates that the defendant is unwilling to comply with the terms of a sentence involving release into the community, *see* T.C.A. § 40-35-114(8), and that measures less restrictive than confinement have been unsuccessful in persuading the defendant to abide by the orders of the court, *see id.* § 40-35-103(C).

Finally, a sentence of confinement is warranted in this case to avoid depreciating the seriousness of the offenses. *See* T.C.A. § 40-35-103(B). Despite the fact that the defendant pleaded guilty to a single count of robbery and a single count of attempted

aggravated robbery, the record establishes that the defendant premeditated the offenses by saving his money, procuring a weapon, and enlisting the help of accomplices with the original stated intent of actually shooting the victim, all because the victim had called the defendant "stupid." The defendant himself admitted during the psychological evaluation that he intended to threaten the victim with the handgun and that he would do so again if the victim continued to talk about him. Although the defendant did not follow through with the plan to shoot the victim, he and his co-defendants nevertheless invaded the victim's home, robbed him at gunpoint, and attempted to rob another person present at the victim's residence. Despite the very serious nature of the offense, the defendant appears unable to grasp the gravity of his actions, evincing, according to the director of the CAPP program, a "cavalier attitude regarding going to the victim's house and pointing a loaded []gun in the face of the victim because [the defendant] was called 'stupid.'"

Although we agree with the trial court that the defendant's youth operates as a factor favoring probation, his previous criminal record, inability to follow the rules of release into the community, and the need to avoid depreciating the very serious nature of the home invasion robbery in this case support the denial of probation. Indeed, the preparer of the presentence report classified the defendant as "a high risk candidate for probation." Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE