# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 10, 2010

## STATE OF TENNESSEE v. MICHELLE LEE RAINES

**Appeal from the Criminal Court for Davidson County**
**No. 2008-C-3166     Cheryl Blackburn, Judge**

**No. M2010-00692-CCA-R3-CD - Filed November 29, 2010**

The defendant, Michelle Lee Raines, pleaded guilty to two counts of facilitation of rape of a child, a Class B felony. Pursuant to the plea agreement, the trial court imposed an effective sentence of ten years with the manner of service left to the discretion of the trial court. Following a hearing, the trial court denied alternative sentencing and ordered the sentences served in confinement. On appeal, the defendant contends that the trial court erred in denying alternative sentencing. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Charles E. Walker, Nashville, Tennessee, for the appellant, Michelle Lee Raines.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Davidson County grand jury indicted the defendant and her husband on four counts of facilitation of rape of a child, *see* T.C.A. §§ 39-11-403 and 39-13-502; two counts of child neglect of a child less than six years of age, *see id.* § 39-15-401; two counts of child neglect, *see id.* § 39-15-401; one count of accessory after the fact, *see id.* § 39-11-411; and one count of failure to report known child sexual abuse, *see id.* § 37-1-615. The offenses involved acts committed against four children, three of whom lived in their household, by the defendant's stepson, who was also a minor at the time of the offenses.

Pursuant to a negotiated plea agreement, the defendant pleaded guilty to two counts of facilitation of rape of a child and received two concurrent sentences of ten years as a Range I, standard offender.[1] The remaining counts were dismissed, and the manner of service of the effective 10-year sentence was left to the discretion of the trial court. The trial court denied alternative sentencing and ordered the 10-year sentence to be served in confinement. The defendant timely appealed these judgments.

The stipulation of evidence presented by the State at the guilty plea submission hearing showed that the defendant knew that her 14-year-old stepson, B.C.D., had been previously accused of sexually abusing a family member.[2] Based upon this accusation, the defendant and her husband knew that B.C.D. "had some very, very serious issues." Nevertheless, the defendant and her husband allowed B.C.D. to reside with them and her four children, J.D., B.D., D.D., and B.P., who were three years old, five years old, 12 years old, and 14 years old, respectively, at the time of the offenses.

Sometime in December 2007, five-year-old B.D., the defendant's daughter, accused B.C.D. of sexually abusing her. Regarding the December 2007 offense, 12 year-old D.D., the defendant's son, reported that he had heard B.D. screaming, that he knew that his mother had responded to the screams, and, therefore, that his mother was aware of the sexual abuse. D.D. also reported that B.C.D. had sexually abused him while living at the home. The defendant and her husband asked B.C.D. to leave their home, and B.C.D. went to live with his biological mother. B.C.D., however, returned to the home "several months later."

Not long after B.C.D.'s return to the home, three-year-old J.D. accused him of sexually abusing her.[3] This time, a Department of Children's Services (DCS) investigation followed. Through the investigation, 14 year-old B.P, the defendant's son, also disclosed that B.C.D. had sexually abused him. The defendant and her husband admitted to investigators that they knew about the sexual abuse, that they removed B.C.D. from their home because of the sexual abuse, and that they allowed B.C.D. to return to their home. The defendant's husband wanted B.C.D. to return to their home, and he believed "that he could handle the situation." Likewise, the defendant "believed that she was providing adequate supervision of the children."

---

[1] Although indicted on facilitation of rape of a child with respect to each of the four victims, the defendant pleaded guilty to counts two and four, which related to acts committed against J.D. and D.D., respectively.

[2] It is the custom of this court to refer to victims of child sexual abuse by their initials.

[3] It is unclear from the record whether J.D. resided with the defendant or was only visiting their home.

Metropolitan Nashville Police Department Detective Jason Terry testified at the sentencing hearing that he investigated the sexual abuse allegations made in the defendant's household. He recalled that three-year old J.D. reported that B.C.D. had vaginally penetrated her with his penis. After her report, B.D., D.D., and B.P. all made similar allegations. Seventeen-year-old B.W. was the only child living in the household who did not report being abused by B.C.D.

Detective Terry said that B.C.D. denied the allegations during their first interview. During a second interview, however, B.C.D. admitted to "having sexual relations" with all four victims. B.C.D. also told Detective Terry that the defendant was aware of B.C.D.'s abuse of B.D. on the night that it occurred in December 2007.

Detective Terry recalled that the defendant denied any knowledge of the abuse prior to the March 2008 report by J.D. She did eventually admit that she was aware of the abuse and "took no action" to protect the children. Detective Terry said that neither the defendant nor her husband had any specific reactions when first told of the substance of the allegations made by the children.

Tiffany Washington, a DCS case manager, interviewed the four victims in preparation for the juvenile court proceedings concerning their abuse. She said that D.D. reported both oral and anal penetration committed by B.C.D. B.D. reported that B.C.D. penetrated her digitally and that the defendant's husband "walked in" on them in the bathroom when it occurred. B.D. told Ms. Washington that B.C.D. "got into trouble" for what he had done to her. Ms. Washington said that B.C.D. and B.P. got into an altercation concerning the abuse and that B.C.D. struck B.P., causing him to have stitches, and threatened him not to tell about the abuse.

Ms. Washington said that the defendant told her that all of the children had behavioral issues. The defendant also told her that "this wasn't her first case dealing with a sexual abuse allegation," alluding to a previous incident when D.D. and B.P. were sexually assaulted by their older sister at their father's home. Ms. Washington said that the defendant denied any prior knowledge of the sexual abuse and that she did not believe that the children needed medical or mental health treatment. Ms. Washington recalled that the defendant's husband said "that [B.C.D.] was his son and he wanted to handle things himself within the home." B.C.D. was placed at Hermitage Hall where he received juvenile sexual offender treatment.

The defendant testified that, in retrospect, she should have asked more questions when B.D. told her that it hurt when she went to the bathroom and when B.P. reported that he was bleeding from his rectum. At the time, she dismissed her children's

complaints as related to either a urinary tract infection or hemorrhoids.  She admitted that "[l]ooking back I should have . . . asked more, if someone had been touching [them], but I didn't."  She said that she would never again allow B.C.D. into her home or around her children.  She denied that she knew of the abuse before the initiation of the March 2008 investigation, but she later admitted during her testimony that B.D. could have reported to her but that she failed to act on her reports.  She said that her husband never told her about witnessing any incidents of abuse.  She also said that she "always carefully supervised [her] children."

At the conclusion of the defendant's testimony, the trial court questioned her briefly in the following manner:

> Okay.  All right.  I just want to make sure you understand that it makes no sense.  I mean, you have your children telling people that they told you, you acknowledge that to the police department, and yet you didn't do anything.  And now you're saying, well, I didn't do anything because I didn't know about it.

To which the defendant replied: "Yes, ma'am."  The defendant also admitted to the trial court that she had failed to attend the recommended parenting classes, but she blamed her failure to attend on the agency's failure to provide childcare for D.D. and B.P. during the classes.  When confronted with the agency's report that she told a representative that she did not have time to attend parenting classes, the defendant admitted that she had "probably" made that remark and explained, "[T]hat was when I had custody of all my children."  The trial court also noted that the defendant's psychosexual evaluation report stated that the defendant "'appears to be at a risk for placing her children in compromising and potentially dangerous situations as she has a history of doing so in the past.'"

The defendant's father, Billy E. Raines, Sr., testified that he and his wife had custody of the children following the completion of the juvenile court proceedings.  He admitted that his daughter "made some very, very, very bad decisions and she knows that."  Nevertheless, he stated, "I don't think she would be a bad risk for [probation]."

The defendant's husband and codefendant, Mark Randall Donnell, testified that he and the defendant had one child together, B.D.  He acknowledged that he raised B.C.D. but that he was "probably not" his father.  He reported using marijuana and cocaine in the past.  He denied prior knowledge of any incidents of abuse.  He did not recall seeing B.C.D. on top of B.D. in the bathroom.  He did not recall B.D. complaining of having pain when urinating.  He denied a relative's report to the juvenile court that he and the defendant

allowed the children to "run around" the house naked and to sleep naked. He acknowledged that he and the defendant could have done more to protect the children and said that "when he thinks about it" there were many "red flags" that went unnoticed.

Luke Yates of the Tennessee Board of Probation and Parole testified that both defendants indicated that they would not comply with the requirements of the sexual offender registry if those requirements included having no contact with their children. He said that the defendants failed to make a full disclosure admitting their culpability for the offenses. He added that "[i]f their testimony was their version of a disclosure or admitting, then th[ey] would be very unsuccessful on sexual offender treatment." Mr. Yates said that without a full disclosure, the defendants would not complete level one treatment and that the failure to do so would constitute a violation of probation.

At the conclusion of the sentencing hearing, the defendant asked the court to grant her some form of alternative sentencing so that she could receive counseling and treatment to deal with her parenting skills. Defense counsel stated that the defendant had "certainly admitt[ed] guilt" and asked the trial court to "grant her an alternative sentence daunting [sic] the recommendations of [the psychosexual evaluation psychologist] where she does have structured therapeutic sessions to address these issues." Defense counsel argued that the defendant, the community, and the defendant's children would all benefit from her receiving an alternative sentence.

In arriving at its sentencing decision, the trial court outlined the applicable sentencing considerations, *see* T.C.A. § 40-35-102, and noted that the defendant was convicted of a Class B felony and, therefore, not considered a favorable candidate for alternative sentencing. *See id*. § 40-35-102(6). The trial court specifically found that the defendant lacked credibility because

> it's just kind of hard to imagine that a mother hearing that someone had touched their child would not immediately run screaming and yelling making sure that the doctor evaluated them and that the person was prosecuted to the fullest and would not certainly be back in the home with them.

The trial court also noted that the defendant's failure to protect her children was a violation of trust. Ultimately, the trial court found that the defendant did not show any amenability to rehabilitation. The trial court found "most importantly . . . [the defendants are] not going to be able to be successful in treatment." It relied upon the psychosexual evaluation report which characterized the defendants as "high risk" because they "do not understand the issues and minimize" what occurred and their role in its occurrence. Based upon these

considerations, the trial court ruled that "incarceration is the appropriate" sentence for the defendant.

The defendant contends on appeal that the trial court failed to make specific findings in support of its denial of alternative sentencing. She also argues that the trial court failed to give credence to the fact that she was forthcoming concerning the offenses during discussions with the children's therapist and was also willing to make adjustments to her living arrangements in an effort to comply with sexual offender requirements. The State contends that the record supports the trial court's denial of alternative sentencing due to the defendant's lack of candor concerning knowledge of the offenses and her resistance to comply with requirements of the sexual offender supervision. We agree with the State.

When considering a challenge to the manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). Our case law has long held that the presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Carter*, 254 S.W.3d at 344; *Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of a sentencing hearing, is obliged to determine the propriety of sentencing alternatives by considering:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing

alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

As the recipient of a Class B felony conviction, the defendant was not considered a favorable candidate for alternative sentencing. *See id.* § 40-35-102(6). Nevertheless, as the recipient of a sentence of 10 years or less, the defendant was eligible for probation. *See* T.C.A. § 40-35-303(a). She bore the burden, however, of establishing her "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956)), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

We note initially that the record shows that the trial court gave appropriate consideration to the requisite sentencing factors and principles in making its determination. In denying alternative sentencing, the trial court relied heavily upon the defendant's lack of potential for rehabilitation, *see* T.C.A. § 40-35-103(5), and her violation of a position of

trust, *see id.* § 40-35-114(14). The defendant gave contradictory testimony regarding her knowledge of the offenses. She admitted, and later denied, knowledge of the offenses committed against her five-year-old daughter by her 14-year-old stepson. Despite some knowledge of B.C.D.'s "issues," she chose to allow B.C.D. to return to her home, where he further victimized her other children. The defendant's attitude concerning parenting classes and prospective compliance with the requirements of the sexual offender registry was recalcitrant, at best. The record supports the trial court's findings and the denial of alternative sentencing based upon the defendant's poor potential for rehabilitation. Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE